**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DAVID GORDON SMITH, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 06-CV-468-TCK-FHM |
| ) | |
| MIKE ADDISON, Warden, ) | |
| ) | |
| Respondent. ) | |

## OPINION AND ORDER

This is a 28 U.S.C. § 2254 habeas corpus proceeding. Petitioner is a state inmate and is represented by counsel. On October 10, 2006, Petitioner filed a brief in support of his petition (Dkt. # 7). Respondent filed a response to the petition (Dkt. # 14). Respondent also provided portions of the relevant state court records (Dkt. # 14) for the Court's use in evaluating Petitioner's claim. Petitioner filed a reply (Dkt. # 17) to Respondent's response. By Order filed August 26, 2009 (Dkt. # 18), the Court directed Respondent to supplement the record. On September 16, 2009, the supplemental record (Dkt. # 24) was filed of record. For the reasons discussed below, the Court finds the petition shall be denied.

### *BACKGROUND*

Pursuant to 28 U.S.C. § 2254(e)(1), the historical facts as found by the state court are presumed correct. In affirming Petitioner's conviction on direct appeal, the Oklahoma Court of Criminal Appeals ("OCCA") summarized the incident resulting in Petitioner's conviction as follows:

> On September 1, 1978, the Catoosa, Oklahoma, Tag Agency was robbed by two men identified as Jackie Ray Young and the appellant, David Gordon Smith. Catoosa Police Chief J.B. Hamby died of gunshot wounds sustained during an attempt to stop the robbery. It was later determined that Jackie Ray Young died at the scene of the crime from self-inflicted gunshot wounds.

> The appellant was charged under the felony-murder doctrine for the murder of J.B. Hamby. He admitted to being present at the scene, but defended on the basis of being there under duress and participating in the robbery due to fear of imminent death from Jackie Ray Young.
>
> Smith testified that Young was his neighbor at his apartment complex and that they had occasionally worked on cars together. He claimed that he was with Young on the morning of the robbery because he had agreed to help Young defraud an insurance company. This was to be accomplished by claiming Young's car was stolen, collecting the insurance money, and then selling the car. Smith further claimed that he agreed to help move the car because Young offered him five-hundred dollars ($500.00) which he needed to purchase an engagement ring for his fiancé.
>
> The appellant also testified that he first learned of Young's plan to rob the tag agency while he and Young were on their way to move the car. Young became very nervous and excited and pulled a gun when the appellant refused to participate. Each time Smith tried to talk Young out of the robbery, Young became increasingly agitated and upset, all the while keeping the gun on him. It was at this time that Young informed him of the details of the robbery.
>
> When Smith and Young entered the tag agency, they pulled bandannas over their faces and ordered the two female clerks at gunpoint to lay on the floor. The appellant taped their hands behind their backs with silver duct tape. A customer who entered the office was ordered to join the two women on the floor. While the appellant and Young attempted to steal blank title registration forms and photographic materials, Police Chief J.B. Hamby drove up. Gunfire immediately ensued resulting in the death of Chief Hamby and Jackie Ray Young. The appellant, wounded in the right hand and thigh, ran out the door and escaped by car.
>
> The appellant drove to the spot where Young had left another car, traded cars, and returned to his Tulsa apartment. He was subsequently transported by ambulance to the Oklahoma Osteopathic Hospital in Tulsa and arrested there later that day.

Smith v. State, 656 P.2d 277, 280 (Okla. Crim. App. 1982)

Based on those events, Petitioner was convicted by a jury in Rogers County District Court, Case No. CF-1978-128, of First Degree Felony Murder. The jury recommended that Petitioner be sentenced to life imprisonment. Petitioner indicated on his application for post-conviction relief, see Dkt. # 14, Ex. 3, that on June 11, 1979, he was sentenced in accordance with the jury's recommendation. Petitioner was represented at trial by attorney E. Terril Corley.

Petitioner appealed his conviction and sentence to the OCCA. On appeal, Petitioner continued to be represented by attorney E. Terril Corley. He raised eight (8) propositions of error as follows:

Proposition 1: (A) The trial court erred in its interpretation of the Oklahoma evidence code in that Dr. Bill Scott should have been permitted to testify as an expert for the defense and Officer David Freiburger should not have been allowed to testify for the prosecution.
(B) The trial court erred in admitting State's exhibits 26, 27, and 28 prepared by the Tulsa Police Department and further erred in recognizing Officer David Freiburger as an expert witness to sponsor the exhibits.

Proposition 2: The court erred in permitting the State to introduce various guns and ammunition taken from the defendant's apartment.

Proposition 3: The Appellant was prevented from having a fair trial due to the misconduct of Juror Wells and by the trial court's subsequent refusal to permit the Appellant to show the juror's misconduct to the court.

Proposition 4: The trial court erred in permitting the State to comment upon the defendant's failure to incriminate himself.

Proposition 5: The trial court erred in overruling the defendant's motion to suppress a statement allegedly made to Tulsa Police Officer Larry Johnson.

Proposition 6: The court erred in permitting the character of the deceased, J. B. Hamby, into evidence before the jury.

Proposition 7: The trial court erred in not recognizing the statutory limitations upon the authority of the Tulsa Police Department to investigate in another town.

Proposition 8: (A) The court erred in permitting the prosecutor to argue the defendant's character prior to the date of the commission of the crime was irrelevant.
(B) The defendant's right to a fair trial was prejudiced by bad faith questions and comments by the prosecutor.
(C) The prosecutor acted in bad faith in referring to the Oklahoma City Steak House murders.
(D) The court erred in not granting a mistrial by reason of the bailiff being allowed to enter the courtroom while jurors were deliberating.

(Dkt. # 14, Ex. 1). In a published opinion, decided June 14, 1982, and modified July 23, 1982, in Case No. F-1979-688, the OCCA affirmed the Judgment and Sentence entered by the trial court. See Dkt. # 14, Ex. 2; Smith v. State, 656 P.2d 277 (Okla. Crim. App. 1982).

According to Respondent, see Dkt. # 14, Petitioner escaped from prison in 1985 and was not captured until 1993. More than three (3) years after being recaptured, on March 10, 1997, Petitioner filed an application for post-conviction relief in the state district court. See Dkt. # 14, Ex. 3. In his application, Petitioner alleged that he "was denied a fair trial and was deprived of his constitutional rights to due process of law as guaranteed by the Constitutions of both the United States of America and the State of Oklahoma by virtue of trial prosecutors' suppression of exculpatory evidence which was highly material to the question of guilt or innocence." See id. The State filed a response to the application. See Dkt. # 24-17. On December 16, 1999, the trial court judge conducted a hearing on the application. See Dkt. # 24-18. Before issuing a ruling, however, the trial court judge failed to be reelected, retired from office, and subsequently died. See Dkt. # 14, Ex. 5 at n.2. The matter was reassigned and by order filed March 9, 2006, the reassigned district court judge denied post-conviction relief. See Dkt. # 14, Ex. 4. Petitioner appealed. After granting Petitioner a post-conviction appeal out of time, the OCCA, by order filed August 25, 2006, in Case No. PC-2006-0707, affirmed the denial of post-conviction relief, finding that Petitioner's "contention that he was unable to discover evidence that allegedly had been suppressed until the year 1993, the same year Petitioner was recaptured and returned to custody in Oklahoma, is not sufficient reason to overcome the doctrine of laches." See Dkt. # 14, Ex. 5.

Petitioner filed the instant habeas corpus action on September 8, 2006 (Dkt. # 2). In his supporting brief, Petitioner identifies one (1) ground of error, as follows:

4

> Proposition 1: The State of Oklahoma deprived Petitioner of due process of law and fundamental fairness by failing to disclose material exculpatory evidence in violation of Brady v. Maryland.[1]

(Dkt. # 7). In response to the petition, Respondent contends that Petitioner's proposition of error is procedurally barred. See Dkt. # 14.

## *ANALYSIS*

### A. Exhaustion/Evidentiary Hearing

Before addressing the claims raised in the petition, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b) and (c). See Rose v. Lundy, 455 U.S. 509, 510 (1982). Respondent concedes and the Court agrees that Petitioner has exhausted the single claim raised in this petition. Furthermore, under the facts of this case, the Court finds that Petitioner is not entitled to an evidentiary hearing. See Michael Williams v. Taylor, 529 U.S. 420 (2000).

### B. Procedural bar

The record confirms that the ground of error raised in the petition was first raised in Petitioner's application for post-conviction relief. The OCCA affirmed the trial court's denial of post-conviction relief, finding as follows:

> This Court affirmed Petitioner's conviction in *Smith v. State*, 1982 OK CR 89, 656 P.2d 277; therefore, all issues previously ruled upon by this Court are *res judicata*, and all issues not raised in the direct appeal, which could have been raised, are waived. We agree with the District Court that the doctrine of laches is applicable in this case.
> Petitioner has forfeited consideration of his application for post-conviction relief through his own inaction. *See Thomas v. State*, 1995 OK CR 47, ¶ 15, 903 P.2d 328; *Paxton v. State*, 1995 OK CR 46, ¶ 8, 903 P.2d 325. Sufficient reason has not been given for Petitioner's failure to raise these issues for twenty-eight years.

---

[1] Brady v. Maryland, 373 U.S. 83 (1963).

5

> For eight of these years Petitioner escaped custody. He was recaptured in South Dakota in 1993. Petitioner's contention that he was unable to discover evidence that allegedly had been suppressed until the year 1993, the same year Petitioner was recaptured and returned to custody in Oklahoma, is not sufficient reason to overcome the doctrine of laches.

(Dkt. # 14, Ex. 5). In response to the petition, Respondent asserts that the OCCA applied a procedural bar to deny relief, and that, as a result, this Court is precluded from considering the claim. See Dkt. # 14.

The doctrine of procedural bar prohibits a federal court from considering a specific habeas claim where the state's highest court declined to reach the merits of that claim on independent and adequate state procedural grounds, unless a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also Maes v. Thomas, 46 F.3d 979, 985 (10th Cir. 1995); Gilbert v. Scott, 941 F.2d 1065, 1067-68 (10th Cir. 1991). "A state court finding of procedural default is independent if it is separate and distinct from federal law." Maes, 46 F.3d at 985. A finding of procedural default is an adequate state ground if it has been applied evenhandedly "'in the vast majority' of cases." Id. at 986 (quoting Andrews v. Deland, 943 F.2d 1162, 1190 (10th Cir.1991)).

Applying the principles of procedural default to these facts, the Court finds Petitioner's ground of error is procedurally barred from this Court's review. The Court recognizes that in his reply to Respondent's response, see Dkt. # 17, Petitioner contends that the OCCA did not apply a procedural bar but instead concluded only that consideration of the post-conviction claims were precluded by laches. However, in affirming the denial of post-conviction relief, the OCCA did not adjudicate the merits of the post-conviction claims, including the Brady claim raised in the instant

6

habeas corpus petition. See Dkt. # 14, Ex. 5. Instead, the OCCA specifically found that Petitioner had failed to provide "sufficient reason" for his "failure to raise the issues for twenty-eight years." See id. The OCCA's post-conviction opinion was entered in 2006, or 28 years after 1978, the year of the crime for which Petitioner was convicted. That period of time encompasses the trial and direct appeal. Thus, the OCCA ruled that Petitioner had failed to provide "sufficient reason" for his failure to raise the claims during the time period including Petitioner's direct appeal. That ruling amounts to a procedural bar. The state court's procedural bar was an "independent" ground because Petitioner's failure to comply with state procedural rules was "the exclusive basis for the state court's holding." Maes, 46 F.3d at 985; see also English v. Cody, 146 F.3d 1257, 1259 (10th Cir. 1998). Additionally, the procedural bar was an "adequate" state ground because, as stated above, the OCCA requires strict adherence to procedural rules and consistently imposes a procedural bar on claims that could have been but were not raised on direct appeal. See Cannon v. Gibson, 259 F.3d 1253, 1267-69 (10th Cir. 2001) (finding a procedural bar adequate for Brady claims not raised on direct appeal); Hale v. Gibson, 227 F.3d 1298, 1330 (10th Cir. 2000) (bar is independent and adequate for Brady claims not raised on direct appeal).

As a result, the Court finds that habeas corpus relief shall be denied on the basis of the procedural default doctrine unless Petitioner demonstrates "cause and prejudice" or a "fundamental miscarriage of justice" to excuse his procedural default of the claims. Coleman, 501 U.S. at 750; Maes, 46 F.3d at 985. To demonstrate "cause," a petitioner is required to "show that some objective factor external to the defense impeded . . . efforts to comply with the state procedural rules." Murray v. Carrier, 477 U.S. 478, 488 (1986). Examples of such external factors include the discovery of new evidence, a change in the law, and interference by state officials. Id. A petitioner is

additionally required to establish prejudice, which requires showing "'actual prejudice' resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 168 (1982). The alternative is proof of a "fundamental miscarriage of justice," which requires a petitioner to demonstrate that he is "actually innocent" of the crime of which he was convicted. McCleskey v. Zant, 499 U.S. 467, 494 (1991).

As "cause" for his failure to raise this claim on direct appeal, Petitioner asserts that he did not discover his Brady claim until 1994 when the State of Oklahoma complied with his Opens Records Request. That allegation is insufficient to serve as "cause" for at least two (2) reasons. First, as noted by Respondent, the record is replete with evidence demonstrating that Petitioner's attorney at trial and on appeal filed multiple motions requesting to be provided with all of the record held by the prosecution, see Dkt. # 14, Exs. 6-17, and commented on the lack of production in his brief filed on direct appeal, see Dkt. # 1, Ex. 1. The pleadings reflect counsel's concern that the district attorney was not providing the records requested. Furthermore, the record demonstrates that counsel was aware of discrepancies between the testimony of the robbery victims and Petitioner. Id. Thus, the claim ultimately presented in Petitioner's application for post-conviction relief and in this habeas petition could have been developed with further investigation and reasonable diligence at trial and/or on direct appeal. However, no specific claim concerning the withholding of material evidence was presented to the OCCA as part of the direct appeal.

Secondly, Petitioner argues that he could not obtain the withheld record until the 1985 passage of Oklahoma's Open Records Act.[2] However, he did not develop his Brady claim until 1994. The nine (9) year delay is directly attributable to Petitioner because he was on escape status

---

[2] See Okla. Stat. tit. 51, § 24A.1, et seq. (1991) (effective Nov. 1, 1985).

during that period. He did not become concerned about the alleged Brady material until he was returned to custody in Oklahoma. Even after he was returned to custody in 1993, he did not file his application for post-conviction relief until 1997. He offers no explanation for the three (3) year passage of time between his discovery of the withheld evidence and the filing of his application for post-conviction relief. Based on review of the record, the Court finds the Brady claim could have been developed at the time of Petitioner's direct appeal. Petitioner simply failed to pursue his Brady claim diligently. As a result, he has failed to demonstrate "cause" sufficient to overcome the procedural bar.

Petitioner's only other means of gaining federal habeas review of his defaulted claim is a claim of actual innocence under the fundamental miscarriage of justice exception. Herrera v. Collins, 506 U.S. 390, 403-404 (1993); Sawyer v. Whitley, 505 U.S. 333, 339-341 (1992); see also Schlup v. Delo, 513 U.S. 298 (1995). To meet this test, a criminal defendant must make a colorable showing of factual innocence. Beavers v. Saffle, 216 F.3d 918, 923 (10th Cir. 2000) (citing Herrera, 506 U.S. at 404). Under Schlup, a showing of innocence sufficient to allow consideration of procedurally barred claims must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error . . . ." Schlup, 513 U.S. at 316. Petitioner has the burden of persuading this Court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Id. at 329. Petitioner bases his claim of innocence on evidence allegedly demonstrating that he did not fire the shot that killed Police Chief Hamby. However, Petitioner's conviction is for Felony Murder. The premise of his allegation is based on legal innocence as opposed to actual or factual innocence and does not satisfy the fundamental miscarriage of justice

9

exception. Therefore, the Court finds the fundamental miscarriage of justice exception is inapplicable in this case.

Accordingly, because Petitioner has not demonstrated "cause and prejudice" or that a "fundamental miscarriage of justice" will result if his claim is not considered, the Court concludes that it is procedurally barred from considering the merits of Petitioner's ground of error. Coleman, 501 U.S. at 750. Habeas corpus relief shall be denied.

**C. Application of doctrine of laches**

To the extent the OCCA's denial of post-conviction relief was based on the Oklahoma doctrine of laches, as opposed to the imposition of a procedural bar, as discussed above, the Court finds Petitioner has failed to demonstrate that the ruling was contrary to or an unreasonable application of Supreme Court law.[3] As discussed above, the OCCA cited Thomas v. State, 903 P.2d 328 (Okla. Crim. App. 1995), and Paxton v. State, 903 P.2d 325 (Okla. Crim. App. 1995), and determined that Petitioner had failed to overcome the doctrine of laches applicable to his claim. In both Thomas and Paxton, the OCCA noted that in contrast to federal law applicable at the time,[4] the

---

[3]In Paxton v. Ward, 199 F.3d 1197, 1206-07 n.3 (10th Cir. 1999) (affirming the denial of habeas corpus relief on a sentencing enhancement claim), the Tenth Circuit noted that "dismissals on the basis of laches are considered decisions on the merits," and analyzed the application of laches under 28 U.S.C. § 2254(d). The cases cited in support of that statement, however, are 42 U.S.C. § 1983 cases and the laches determinations were considered "on the merits" for the purpose of meeting the technical requirements for applying *res judicata*.

[4]In 1995 when the OCCA issued its opinion in Thomas, Rule 9(a), *Rules Governing Section 2254 Cases*, provided the source of the federal doctrine of laches as applicable to habeas corpus petitions. That rule provided as follows:

> A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances

10

Oklahoma doctrine of laches did not place upon the state the threshold burden of demonstrating actual prejudice. Thomas, 903 P.2d at 332; Paxton, 903 P.2d at 327. The Thomas court specifically declined to adopt the federal law and held that consideration of a collateral attack may be precluded where the petitioner "has forfeited that right through his own inaction." Thomas, 903 P.2d at 332.

First, to the extent Petitioner contends that the OCCA erroneously applied the state law of laches, Petitioner is not entitled to federal habeas corpus relief. See Estelle v. McGuire, 502 U.S. 62 (1991) (federal habeas court can review only for federal constitutional, statutory, or treaty errors). Second, Petitioner is not entitled to habeas corpus relief on any challenge to the OCCA's application of the doctrine of laches unless he demonstrates that he was deprived of a fundamentally fair proceeding as a result of the state law error. Petitioner has failed to demonstrate that, under the facts of this case, the OCCA's application of laches resulted in a deprivation of due process because his underlying Brady claim lacks merit.

The law is well settled that criminal convictions obtained by presentation of known false evidence, or by suppression of exculpatory or impeaching evidence, violate the due process guarantees of the Fourteenth Amendment. Napue v. Illinois, 360 U.S. 264 (1959); Brady, 373 U.S. 83 (1963); Giglio v. United States, 405 U.S. 150, 153-54 (1972). In order to establish a Brady prosecutorial misconduct violation, a habeas petitioner must show that: (1) the prosecution suppressed evidence, (2) the evidence was favorable to the accused, either exculpatory or

---

prejudicial to the state occurred.

Rule 9(a). However, the AEDPA, enacted in 1996, or ten (10) years before Petitioner filed the instant petition, provides for a one (1) year statute of limitations for habeas corpus petitions, and, at least in theory, eliminated the need to consider application of the doctrine of laches. As a result, Rule 9 was amended in 2004 to delete subsection "a" as "unnecessary." See Advisory Committee Notes to Rule 9.

11

impeaching, and (3) the evidence was material to the defense. Banks v. Dretke, 540 U.S. 668, 691 (2004); Kyles v. Whitley, 514 U.S. 419, 433 (1995); United States v. Bagley, 473 U.S. 667, 682 (1985). Under the facts of this case, the Court's inquiry focuses on the third prong addressing the materiality of the alleged suppressed evidence. Exculpatory evidence is material only if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Bagley, 473 U.S. at 682. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." United States v. Agurs, 427 U.S. 97, 109-110 (1976). As noted by the Tenth Circuit Court of Appeals:

> The Supreme Court has further refined the Brady/Bagley materiality standard as follows:
>
>> Bagley's touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.
>
> Kyles v. Whitley, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (citing Bagley, 473 U.S. at 678, 105 S.Ct. 3375). See also Scott v. Mullin, 303 F.3d 1222, 1230-31 (10th Cir. 2002). When engaging in a materiality analysis, we are not to consider each piece of withheld evidence in isolation. Banks, 54 F.3d at 1518.
>
>> Rather, we review the cumulative impact of the withheld evidence; its utility to the defense as well as its potentially damaging impact on the prosecution's case. Furthermore, . . . we evaluate the materiality of withheld evidence in light of the entire record in order to determine if the omitted evidence creates a reasonable doubt that did not otherwise exist. What might be considered insignificant evidence in a strong case might suffice to disturb an already questionable verdict.

Id. (internal citations and quotations omitted).

Snow v. Sirmons, 474 F.3d 693, 711 (10th Cir. 2007). The habeas petitioner bears the burden of presenting evidence to establish a Brady violation. Foster v. Ward, 182 F.3d 1177, 1191 (10th Cir. 1999).

In this case, after reviewing the allegedly withheld evidence, see Dkt. # 7, attachments, in conjunction with the evidence presented at trial, see Dkt. # 24, Tr. Trans., along with Petitioner's admissions in his habeas pleadings, the Court concludes that the information contained in the allegedly withheld documents does not create a reasonable probability that the verdict would have been different. Kyles, 514 U.S. at 434. The State presented overwhelming evidence that Petitioner was guilty of felony murder. Petitioner admits, as he did at trial, see Dkt. # 24, Tr. Trans. Vol. X at 1868-1911, that he was present during the course of the armed robbery and shootout that took the life of Police Chief Hamby. Although he emphatically argues that he fired no shots, he admits now as he did at trial, id., that he was armed during the robbery. The information contained in the allegedly withheld documents may have had impeachment value. However, none of it alters the facts supporting the conviction for felony murder. Furthermore, Petitioner was sentenced to life imprisonment, the lightest sentence possible for felony murder. Petitioner has failed to convince the Court of the existence of a reasonable probability that, had the withheld evidence been disclosed to the defense, the result of the proceeding would have been different. Bagley, 473 U.S. at 682; Snow, 474 F.3d at 711. Petitioner was not deprived of due process.

## *CONCLUSION*

After carefully reviewing the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws or treaties of the United States. His petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. The petition for a writ of habeas corpus (Dkt. # 2) is **denied**.

2. A separate Judgment shall be entered in this case.

DATED THIS 21st day of September, 2009.

_____
TERENCE KERN
UNITED STATES DISTRICT JUDGE